We're going to move to Terrell or Terrell, not sure which, versus the Secretary of the Department of Veteran Affairs. Thank you. Okay, I think we're settled now. Counsel, I'm surprised they weren't staying for your case, but. Well, this case hasn't captured the attention of the country. It's very important for federal law, especially federal employees. Well, I can assure you that the judges think every case is important. Thank you. Your Honor, I believe that this case, while there's a lot of facts that have been discussed, this case is about law. There are a number of errors of law in this case which affected the analysis of facts. First and foremost is the... Well, let me say this. We're here on de novo review because it's summary judgment, Mr. McGree. Okay? And let's assume that the district court misapplied Babb. Okay? Yes. Babb v. Wilkie and Babb v. Secretary, we confirm for any reason supported by the record. We're here de novo. Tell me what evidence creates a genuine issue of material fact that anyone discriminated against your client. I will address that directly. First of all, I just want to say under Anderson v. Liberty Lobby, material facts depend upon a correct analysis. Okay. But what I'm saying is we're going to assume the district court misapplied, misunderstood the law. But even if we have a correct understanding of the law, we are here de novo. That means we can look at it completely anew. What about this record creates that genuine issue of material fact? Throughout this process, the error was the subject of differential treatment. In the way it was run, the panel composed of leaders who knew the criteria for the position each time rated Terrell first. They understood the very special environment. And, you know, these factors are listed on pages 43 and 44 of the brief. And it's a discussion that continues to page 45. They understood the very special environment the CLC chief nurse would be working in. And they rated her number one. Ferraro's errors can be found by a jury to be intentional. Doloreso can be found by a jury to have known that those errors were being made. Doloreso's claims of how she goes about doing things have been disputed by sworn statements by a number of people. We cite pages of that on page four. Okay, so my understanding, perhaps just for my clarification, is that what you're arguing essentially in terms of material fact have to do around the reasons around her failure to be promoted. Is that correct? The lack of promotion. One time a white woman was hired. For some reason, she left. And then the woman from Grenada. No. No, I'm not challenging. The reasons for what happened is the ultimate decision. Okay, what I'm challenging is the process. The way or process of making that decision in the Supreme Court. So then what impact does it have that there were allegations of discrimination, differential treatment, then a new process for hiring people was created, and your position is that that new process still didn't cure whatever issue existed that necessitated the implementation of that new system? My position is that my client was treated differently in the process than the process required. That's differential treatment. However, you're absolutely correct. And I'm trying to understand how she was treated differently. What are the facts that you're presenting to support that proposition? Well, let's go with one because we're dealing with a merit system, with merit systems principles. So let's just take one. There was a preselection of the person that ultimately got the job. How can that not be differential treatment under the merit system? Well, it's not. The question is, what evidence is there that it was race? The question is, what evidence is there that it was race? Well, if Carter recognizes that if you have guidelines that are designed to address minority concerns, and those are violated without reasonable explanation, then that can implicate race. But the bottom line is you still have to show that there was some kind of discrimination going on here. I mean, you still have to show there was some kind of discrimination, and the person or the people who were selected were of the same race. So that makes it a little difficult to show that race was. I mean, maybe it doesn't, but then you need to explain why that is. Yeah. Your Honor, we've cited the Byrd case and the Howard v. Roadway Express case. And it is when someone is selected in these circumstances after a period of time, as two years expired, and there's lawsuits being brought against the person because the person wouldn't allow the process to change what they were doing, the selection of someone of the same race doesn't answer the question. That's a jury question for a jury. You're saying that we shouldn't look to who's ultimately hired because a lot of time elapsed, and it doesn't mean that she wasn't discriminated against before the person who was ultimately hired was hired. Is that your argument? Well, I believe that in this case there's two points where someone of the same race were hired. The second time that's cited in the decision is Raina Rashad. That's two years later. That's when all these lawsuits are going on, in federal court, actually. And at the time, the selection was made in the first instance, which was Cheryl Stephen Rameau. At that point in time, I believe the evidence allows the jury to find that that was a cover-up. Perhaps we need to elaborate more on the factual basis for her claims. But I'm interested in how you would suggest this court articulate a test for the district courts to follow when it comes to applying BAB. As I read BAB, Justice Alito recognized that race in this case that you've alleged, or national origin, doesn't have to necessarily, for the federal sector provision, be the only reason for the differential treatment, but it does have to be the but-for reason with respect to certain relief that's being requested, the ultimate decision. That's how I understand BAB. How do you understand BAB? And again, how would you suggest we articulate our test? I'm so happy that you asked that question, because this is the problem that I believe a lot of district court judges are having. In fact, this district court judge treated the ultimate decision as the dog, and the differential treatment as the tail. Let me read you from the BAB decision. Very instructive. When they're discussing two burden-shifting cases, Texas v. LaSage and Mount Healthy, the language they use for LaSage, where a plaintiff challenges a discrete governmental decision based on an impermissible criterion, and it is undisputed that the government would have made the same decision regardless. There is no causable, cognizable injury. The second part, Mount Healthy, rejecting the rule that would require reinstatement, even if the same decision would have been reached had the incident not occurred. The same decision defense is exactly a burden-shifting defense that are required by Mount Healthy and LaSage. So it is very important for this court to make clear that aspect, because too many arguments, too many cases, too many evidential decisions are being made based on the cases the Supreme Court rejected. In other words, Gross, Nassar, the single motive cases. Can I turn your attention for just a moment to the retaliation claim that is based on Dr. Reuter, Dr. Reuter's disabilities? I'm just wondering if that claim was exhausted. And the reason I ask is because I'm looking at the EEOC complaint that was filed. And the EEOC complaint says the complaint is about harassment and reprisal that Dr. Reuter had a previous union complaint against Ms. Doloresco and her previous chief nurse, Ms. Lucille Rea. And based on your client's association with Dr. Reuter and her assisting in the HCCLC, Dr. Reuter was harassed by Ms. Doloresco and Ms. Lucille Rea as to what role Dr. Reuter had in HCCLC. In other words, it seems like it's complaining that she was harassed based on her association with Dr. Reuter because of Dr. Reuter's previous union complaint, not because of Dr. Reuter's disabilities. And I'm wondering if you can just maybe quickly address that for me. The union complaint was disability discrimination. That was it. The union can complain about discrimination, and that's what the complaint was. It was made against Rea, decided by Doloresco. In this case, an important point, given the way they've described Rea, is to look at 43-1, page 2. You will see that three weeks before the meeting where she's claiming that Terrell messed up because of Reuter, Rea is emailing with Doloresco about who is interested in taking this position. She was involved in discussions with Doloresco right at that time. So the Reuter thing can be three things, or it can be a combination of those three things. It can be direct retaliation for Terrell opposing discrimination against her. Remember, they didn't want her to have any role. The second thing it could be would be just a retaliation against her under Thompson because she was so closely associated with Joseph, who stood up against Doloresco on a number of occasions, including in hiring minorities and opposing disability. And the final basis is the Heffernan case and the Fogelman case in the third district, which recognizes an anticipated or a perceived retaliation because it's the reason that management is acting that is the important point. All three of those are possible for a jury in this case. OK, Mr. McGree, you've saved four minutes. We're going to hear from Mr. Sikkanen. Good morning, Your Honor. May it please the court. Sean Siakkanen for the Secretary of Justice. I apologize, Siakkanen. That's perfectly fine, Your Honor. I'd like to start with Judge Abudu's question, which I think really gets to the heart of the matter on the legal side. Babb did two things. First, the Supreme Court made crystal clear that but-for causation governs every step of the analysis, both prongs with respect to the end result and with respect to differential treatment. And the second change that Babb effectuated was adding that second avenue of relief for discrimination plaintiffs who are unable to meet their burden to prove that discrimination or retaliation was a but-for cause of the end result of a personnel action. And in those cases where there is no evidence of that, Babb makes clear that those plaintiffs still may be able to obtain injunctive relief, but they still have to establish that race or national origin or protected activity was the but-for cause of some differential treatment that played a role in the decision-making process. So race would have to have been but-for cause in the process leading up to the eventual decision. Is that right? Yes, and not just but-for cause in that process. But-for cause, the protected activity or characteristic would have to be the but-for cause of differential treatment in that process that played a role in the process. And I mention that because the court... I don't know that the district court correctly stated the law when it described the applicable inquiry, but then when I look at what the district court did in evaluating the record, it looks like it did what Babb required. I agree, Your Honor. I found the district court's opinion a little difficult to follow in some respects myself, but I don't... To your point... Why don't we talk about that? Why don't we talk about your view of why that might be true? I'm sorry, my... Your view of why, when it actually came to the application to this record, that the district court at least did the right thing. And what the record actually shows and what the record says particularly about race. Well, to put the headline first, what this record shows is that Ms. Terrell was treated, if at all differently, she was treated better than any similarly situated applicant for this job throughout the entire process, not worse. So, to the extent that there's any differential treatment, it does not inert her benefit. The issue is whether Ms. Terrell can identify a genuine dispute of material fact from which a reasonable and fair-minded jury could infer in her favor on any of the claims. Now, most of the facts aren't in dispute, and none of the facts that Ms. Terrell does dispute are material because they have nothing to do with discrimination or retaliation. There was at one point a miscalculation of an interview score to her detriment, but it doesn't appear to me that there's anything in the record to suggest that that had anything to do with race. Sure, that's the first... Well, a few points in response to that, Your Honor. I think the first answer is exactly as you said, that there is no evidence that that miscalculation had anything to do with her race or her national origin. The second point that I would make is that it's not clear that that miscalculation was material in any way because the... So, that miscalculation was a scoring error that ended up having the result of changing her interview score in the first round from 34 to 33. She was still the highest ranked... Her interview was still the highest ranked at that point. And the administrative officer who admitted making that mistake explained through two declarations that she made two overlapping mistakes that led to that scoring error. First, she explained that she had jumbled the scores of seven applicants, the scores from one panelist for seven applicants. So, that's something that clearly was not directed at Ms. Terrell. It did not affect her exclusively. It would be odd to attempt to discriminate or retaliate against someone on any basis by jumbling scores of multiple candidates. She didn't just dock Ms. Terrell's score. The other mistake that she made was in entering the formula in the Excel spreadsheet to calculate the average scores. She inadvertently excluded an entire column. She excluded all of the scores from a different panelist, but again, for every candidate. So, there were several problems with how that initial matrix had been calculated. But at the end of the day, Ms. Terrell remained the highest scoring interviewee even after those mistakes were made. And in any event, as Your Honor pointed out rightly, there's no evidence from which a reasonable and fair-minded jury could infer that race or national origin or retaliation in any way motivated those mistakes. I'm sorry, go ahead. I was going to turn your attention to the Reuter retaliation claim. So, if you want to ask more... This is related to Babb. So, let's say that she had... You said essentially Babb has created two avenues of relief. The ideal one at the end, the ultimate decision, but this middle part. What if she had established that her race or her national origin played some role in the preferential treatment? Babb says that you can get some relief if you establish that. What relief would Ms. Terrell be even eligible to receive? What would that look like in practical terms? A Title VII plaintiff can obtain injunctive relief if they can show that they were subject... What would the injunctive relief look like in this case for this plaintiff? Well, in this case, it's hard to imagine. But in general, I think the injunctive relief would be an order barring the type of discrimination that the plaintiff had proven, if they were able to prove the discrimination. So, I think Babb's reinstatement might not necessarily be available. But what other kind of injunctive relief that would benefit this plaintiff? I mean, I don't think she could get any relief that would actually benefit her. But if somehow she were able to establish differential treatment that played a role in the decision-making process, and that her race or national origin was a cause of that, then I think she would be able to obtain an injunction prohibiting that same sort of discrimination in the future. If, for example, she was still employed. So, would that remedy, essentially, that injunctive relief in Babb, only really be available to people who were still employed? Not necessarily. I think it could apply to anybody who's applying for a federal job, even if they're not currently working with the federal government. You're saying an injunction obtained by a former employee would somehow benefit someone who's not a party to the case? Well, to be clear, it's not clear to me exactly how these injunctions would work, and I'm not aware of any courts that have issued a post-Babb injunction. But my understanding, theoretically, is that the injunctive relief would prohibit the particular discrimination in the process It would prohibit it with respect to that plaintiff, right? Well, that's a good question. That's a question, I guess, about universal injunctions. Right. That's not what we ordinarily think injunctions are about. Yeah, I would imagine that, at a minimum, the plaintiff would be able to obtain, by proving what we've just discussed in this hypothetical scenario, an injunction prohibiting that sort of discrimination against that plaintiff, is what I should have clarified. I did not mean to suggest that Babb supports nationwide or universal injunctions. And I want to make sure I provide Judge Rosenbaum an opportunity, but just one more quick question. To get to that middle, second level of relief that Babb allegedly, apparently provides, do you need to establish a comparator for the deferential treatment? What does that test look like? How would you articulate it? A comparator may be necessary. I think it depends on the type of the claim and the type of evidence that is presented. So, in general, Title VII plaintiffs can prove their claims with three types of evidence, direct evidence, circumstantial evidence, and in some cases, statistical evidence. The comparator is a linchpin of the circumstantial claims. And this Court has said in several unpublished decisions after Babb, cited in our brief, that a similarly situated comparator remains a critical part of a Title VII plaintiff's claims, even after Babb. Well, that's interesting. Because if Babb says that you simply have to show that it was a motivating factor, that it was part of the decision, part of the process that resulted in the decision, then what difference does it make if there was a comparator? Well, to be clear, Babb does not say motivating factor. Babb is but-for-cause. Well, actually, the language is from the statute, and I'm sorry, I don't have it right in front of me. I know it boils down to a but-for-cause. However, the language that it relies on to get there is from the statute, which is different than the language under Title VII, and at least in my view, does not require a showing of a comparator. You have to show that race was a part of the reason for the decision. And you can do that even under our case law and even in regular Title VII cases by showing a convincing mosaic. But in this case, under the language, you just have to show that it was an ingredient in the final – I think I agree with most of what you said. And to be clear, this Court has also, I think, explained that a plaintiff who proceeds in a circumstantial theory can get past summary judgment either with the McDonnell-Douglas burden shifting, which no longer fits well in public sector cases after Babb, or with the convincing mosaic. And I think the convincing mosaic standard is how public sector plaintiffs would likely need to proceed after Babb. But the similarly situated comparator is a linchpin even as part of that analysis. And we cite those cases in our brief, I believe. It just doesn't make sense, though, to me at least. It doesn't make sense from a logic point of view. If you look at the actual language in the statute of what is required to be proven under the statute, I don't understand how a comparator must be shown in order to satisfy that language. You're right. It need not necessarily be shown in every case, but I think it depends on the plaintiff's theory and the type of evidence that they're choosing to proceed with. One way that I would agree that a plaintiff could get around the need for a comparator would be with direct evidence of discrimination. But even in circumstantial cases, I'm just not sure that you need to show a comparator post-Babb in these kinds of cases. Well, I guess I'll just say that we cite to several of the post-Babb cases from this court, which are unpublished. Right. They're not binding on us, and it doesn't necessarily mean that a panel that would issue precedential decisions would reach the same conclusion. Maybe it would, but maybe it would not. I guess the further point that I would make is logically, it makes, and intuitively, it makes sense to me that in most cases, in the vast majority of cases, a plaintiff who's proceeding on a Title VII or 80 EA discrimination claim on a circumstantial theory probably would need to show that there was someone else who was treated differently. Let's cut to the chase. So the showing is that race has to have been a but-for cause of differential treatment. That played a role in the process. That is what the Supreme Court said in Babb. Right. And I guess what you're saying is, depending on the theory of the plaintiff's case, the differential treatment, to show that there's something differential, you have to compare something to something else. Yes, I think that's one way to put it. Although the language of the statute says, shall be made free from any discrimination. And so that doesn't require a showing of a comparator. Not by its terms, and not in every case, but I'm just struggling to find an example in which a plaintiff who has nothing but circumstantial evidence would likely be able to make that showing without pointing to someone else outside of the protected race or class who was treated more favorably. It's just hard for me to see as a practical matter how that would play out. Let me just quickly ask you about the Reuter retaliation claim. And I want to ask sort of as a hypothetical. Let's say that an employer came in one day and said, nobody is to befriend, talk to, give support to, comfort, work with, etc. This person, because she is whatever the characteristic is that's protected. And somebody went ahead and befriended the person, supported the person, etc. Would they have an opposition claim? I don't know that they would have an opposition claim. And that's what Ms. Terrell brings. Because an opposition claim requires opposition to having engaged in protected. Would they have a retaliation claim for having engaged in that kind of, what they might view as opposition? I guess in your hypothetical, the retaliation would be retaliation for having befriended the person. Right. When they were told not to. I don't know, Your Honor. To me, the retaliation claims usually require, meaning a Title VII or an ADEA retaliation claim, as opposed to a hostile work environment claim. Usually must be predicated on a personnel action. Some retaliation or discrimination in the course of the personnel action. A hostile work environment claim can get to things of that nature. But in this case, I mean, it seems like that would, to me, it seems like that would, it seems like an employer could not go in and say, you can't do X, Y, and Z. You can't do anything to support this employee. And they do it because of a protected reason. And then another employee does X, Y, and or Z. And action is taken against that employee for that reason. I mean, that seems problematic to me. It seems problematic to me, too. Under the statute. Yes, that seems problematic to me, too. I'm just not sure how that example fits within the rubric of a classical discrimination or retaliation claim. And it's also, I think, fairly far afield from what Ms. Terrell alleges. That's not really what she alleges here. She doesn't say that the person came in and said that. But I guess the predecessor question is what would happen in that situation. And if there's a cause of action, then the next question is, well, if it's effectively the exact same thing, except it wasn't said you shall not specifically do A, B, and C, why is that any different? I'm not sure, Your Honor. To be honest, I have not thought about that particular circumstance. I agree that it causes me concern and seems problematic. I just don't know how it would fit within the existing rubric. But to clarify, I would like to make the point that Ms. Terrell's claim isn't just that she was retaliated against in response to a directive or a threat along those lines. Her claim is that she was retaliated against simply for a very general and vague association with Dr. Reuter. And this is part of her retaliation and her retaliatory hostile work environment claim. And this court has said that an unnecessary element of those claims is actually engaging in protected activity that can form the basis of the retaliation. And we don't have that here. So I don't know how your hypothetical fits within that. Well, I guess I'm just asking whether this could be perceived as protected activity. In the hypothetical scenario. I think that's the problem with what she's arguing here. Her argument is that simply being friends with Dr. Reuter somehow rises to the level of protected activity. And I'm not aware of any 11th Circuit cases that have held that, and I think that would actually be contrary to the test that this court has acknowledged in every other circumstance for protected activity. Okay, Mr. Saekinen, we appreciate your time this morning. Thank you. Mr. Magri, you saved four minutes. Thank you, Your Honor. The but-for argument that's made by counsel here is made in every district court. It is wrong. The two types of but-for are the first one, preferential treatment does not have to affect the ultimate decision. They always confuse it. The second one, the government has the burden to prove they would have made the same decision under Mount Healthy. So that really is going to be important for district courts to hear. So for that first test that you just described, when all you have is circumstantial evidence, how do you establish preferential treatment without comparing yourself to someone else? This case, and I think you've all sort of touched on it, this case is bad, created a mixed motive or mixed reason statute. Every time you have that, circumstantial evidence in its purest form is what you should consider. That's according to Desert Palace on the Supreme Court side, Quig on the 11th Circuit side. So that's a free analysis. This comparator stuff is fine, but it is definitely not necessary. So how do you establish when all you have is circumstantial evidence, preferential treatment without comparing yourself to someone else? You do it two ways, for sure. First is, any of the evidence that allows you to show race or any other characteristic was involved in an actual decision. In other words, all the cases that address pretext and the kind of evidence that would allow you to show that, those cases provide you a basis for, and that's what Carter is, and that's why we cite that. FERNCO, it's the same kind of thing. And as far as the second one is, 404B evidence. There is so much 404B evidence that no one considered in this case. It happens too often. 404B evidence goes directly to intent. That's what Goldsmith says. It goes to identity, modus operandi, demurs. It has to be considered, and it wasn't considered here at all. Counsel, you asked the question. Your Honor, I'm sorry. Slow down. You asked a question early on about Dolores not following this. There was actually an interesting set of evidence which shows that they changed the standard rules after this. If you look at docket 56, it's in 35-685 of 364. In docket 31-3, page 90, you're going to see that Dolores and Ferraro changed the consistent panel requirement in 2016 so they could continue to do the things they wanted to do. This is a real problem in the federal government. Read Diane Lane's testimony. She's a former military person. She also happens to be African American, but she was highly regarded in the military, and she was given a front office job. She left because of what Dolores was doing. 404-B evidence needs to be considered. And as far as your question about Grutter. Be mindful of our time. The red light is shining. I think we understand your case, and we need to move to the next one.